## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

STERLING MORTGAGE &
INVESTMENT CO.,

      Plaintiff,

vs.

CITIMORTGAGE, INC., BANK OF
AMERICA, N.A., and COMERICA
BANK,

      Defendants.

_____/

Case No. 14-10709

Hon. Gerald E. Rosen

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ March 23, 2015 _____

PRESENT:  Honorable Gerald E. Rosen
                 Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiff Sterling Mortgage & Investment Co. ("Sterling") commenced this suit in

state court on or around January 23, 2014, asserting a variety of state-law claims against

Defendants CitiMortgage, Inc. ("CMI"), Bank of America, N.A. ("BANA"), and Comerica

Bank ("Comerica") arising from Sterling's purchase of foreclosed property in which

Defendant CMI claims a superior interest by virtue of an assignment from Defendant

BANA.  Defendant BANA timely removed the case to this Court on February 14, 2014,

citing the diverse citizenship of the parties, *see* 28 U.S.C. § 1332(a), and the two other Defendants consented to this removal.

In lieu of answering the complaint, each of the three Defendants has filed a motion to dismiss Plaintiff's complaint in its entirety with prejudice.  In support of these motions, Defendants contend (i) that Plaintiff's claim for quiet title and its request for subordination of the property interest held by Defendant CMI are defeated by Plaintiff's acknowledged awareness that the subject property was subject to a senior mortgage at the time Plaintiff purchased it; (ii) that Michigan's statute of frauds defeats Plaintiff's claims of fraudulent and innocent misrepresentation, as well as some or all of the remaining claims asserted in Plaintiff's complaint; (iii) that Plaintiff's claim of slander of title fails for lack of allegations of a false statement about the title to the subject property or a loss incurred by Plaintiff as a result of any such false statement; and (iv) that Plaintiff has failed to identify any benefit to any Defendant that would support its claim of unjust enrichment.  Plaintiff has filed a single consolidated response in opposition to Defendants' three motions, arguing primarily that at least some of its theories of recovery can be sustained by virtue of its allegations (i) that Defendant BANA, upon being contacted by one of Plaintiff's employees, was unable to locate any record of its alleged senior mortgage interest in the subject property, and (ii) that due to a purported delay in the recording of the assignment through which BANA transferred this alleged senior mortgage interest to CMI, Plaintiff was not given the requisite notice under Michigan law that the property it purchased was subject to a senior mortgage.

2

Each of the Defendants' motions has been fully briefed by the parties. Having reviewed the parties' briefs in support of and in opposition to these motions, as well as the accompanying exhibits and the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are adequately presented in these written submissions, and that oral argument would not assist in the resolution of these motions. Accordingly, the Court will decide Defendants' motions "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. As explained below, the Court finds that Defendants' motions should be granted, and that Plaintiff's complaint should be dismissed in its entirety.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

In October of 1997, non-parties George and Malinda Sims obtained a loan in the amount of $139,900.00 from MICA Mortgage Corporation, and secured this loan with a mortgage (the "MICA Mortgage) on real property located in Shelby Township, Michigan. The MICA Mortgage passed to Standard Federal Bank through an assignment dated October 30, 1997. The mortgage was recorded with the Macomb County Register of Deeds on November 19, 1997, and the assignment of this mortgage to Standard Federal was recorded on January 9, 1998. Through a series of mergers, Defendant BANA acquired Standard Federal's assets in 2007, including its interest in the MICA Mortgage.

On December 1, 2003, roughly six years after they took out the MICA Mortgage, Mr. and Mrs. Sims were granted a home equity loan by Defendant Comerica in the amount of $59,600.00. This loan was secured by a second mortgage (the "Comerica Mortgage")

on the Shelby Township property, and this mortgage was recorded with the Macomb County Register of Deeds on December 22, 2003. The Comerica Mortgage expressly acknowledged the existence of a "Senior Lien" on the Shelby Township property. (*See* Defendant CMI's Motion, Ex. C, Comerica Mortgage at 1.)[1]

In early 2013, Defendant Comerica commenced a foreclosure by advertisement of the Comerica Mortgage. After a series of adjournments, a sheriff's sale was conducted on May 31, 2013. According to the complaint, "[p]rior to the Sheriff's Sale, as a prospective bidder at the Sheriff's Sale, [Plaintiff] performed due diligence to investigate the status of title to" the Shelby Township property, and this investigation revealed the existence of the MICA Mortgage. (Complaint at ¶¶ 17-18.) Plaintiff further acknowledges its awareness that Defendant BANA, as successor to Standard Federal Bank, had "acquired at least some portion of the mortgage portfolio" formerly held by Standard Federal, leading Plaintiff to contact BANA and "inquire[] as to the status of the MICA Mortgage." (*Id.* at ¶ 19.) In response to this inquiry, a representative of Defendant BANA allegedly advised Plaintiff that BANA had no "record of an active account for the MICA [M]ortgage." (*Id.*) This BANA representative further promised that "a discharge would be issued," but no such discharge of the MICA Mortgage was forthcoming from Defendant BANA. (*Id.*)

_____

[1]The Comerica Mortgage identified the holder of this lien as "ABN-AMRO." (*See id.*) As explained in Defendant BANA's motion, ABN AMRO North America Holding Company was the parent corporation of LaSalle Bank Midwest, N.A. prior to LaSalle's merger with BANA, and LaSalle, in turn, was the successor in interest to Standard Federal Bank. (*See* Defendant BANA's Motion, Br. in Support at 3 n.2.) It is evident, then, that the "Senior Lien" disclosed in the Comerica Mortgage refers to the MICA Mortgage that was assigned to Standard Federal back in October of 1997.

4

Following this investigation and communication with Defendant BANA, Plaintiff participated in the May 31, 2013 sheriff's sale and was the successful bidder, purchasing the Shelby Township property for $64,627.82.  On June 17, 2013, the sheriff's deed reflecting Plaintiff's purchase of the property was recorded with the Macomb County Register of Deeds.  (*See* Complaint, Ex. 2, Sheriff's Deed.)

On May 30, 2013 — just one day before Plaintiff purchased the Shelby Township property — Defendant BANA assigned the MICA Mortgage to Defendant CMI.  This assignment was recorded with the Macomb County Register of Deeds on July 26, 2013.  Later in 2013, CMI commenced a foreclosure by advertisement of the MICA Mortgage, with a sheriff's sale initially scheduled for January 31, 2014.

Upon learning of this foreclosure effort, counsel for Plaintiff sent a December 26, 2013 letter to Defendant CMI's counsel, Trott & Trott, P.C., noting that CMI's interest in the Shelby Township property was "not reflected in the public records" when Plaintiff purchased the property on May 31, 2013, and complaining of an "apparent defect" in the assignment through which CMI acquired its interest in the property.  (Complaint, Ex. 8, 12/26/2013 Letter at 1.)  Plaintiff's counsel further observed that Plaintiff had previously contacted counsel for Comerica — namely, the very same Trott & Trott firm that now represented CMI — as part of its effort prior to the May 31, 2013 sheriff's sale to identify other parties that might claim an interest in the Shelby Township property, but the law firm had "refused to release any information" in response to Plaintiff's inquiry, despite its purported knowledge at the time that CMI claimed such an interest.  (*Id.*)  In light of these

5

concerns, Plaintiff's counsel demanded that the Trott & Trott firm "immediately contact Comerica Bank to arrange for the repurchase of [Plaintiff's] interest in the [Shelby Township] Property which was ultimately procured as the result of withheld information." (*Id.* at 2.)

A Trott & Trott attorney, Timothy Chervenak, responded to this letter on January 7, 2014, observing that both the Comerica Mortgage and the MICA Mortgage — as well as the assignments of the latter mortgage, first to Standard Federal and then to CMI — were recorded with the Macomb County Register of Deeds.  (*See* Complaint, Ex. 9, 1/7/2014 Letter.)  As for Plaintiff's past inquiry to Trott & Trott regarding possible interests in the Shelby Township property, Mr. Chervenak explained that his firm "does not provide title search results or opinions regarding the status of title to non-client third parties and is under no obligation or duty to do so."  (*Id.*)  Finally, Mr. Chervenak advised Plaintiff that Comerica had denied its request to repurchase Plaintiff's interest in the Shelby Township property.  (*See id.*)[2]

Dissatisfied with this response, Plaintiff commenced the present action in state

_____

[2]At around the same time that Plaintiff's counsel was communicating with the Trott & Trott firm concerning the Shelby Township property, Plaintiff's counsel also sent a letter to Defendant BANA regarding the mortgages on this property.  In a response dated January 15, 2014, a BANA representative advised Plaintiff's counsel that the bank had been "unable to locate a loan number or property address with the information that you provided in your correspondence," and that "[i]n order for [BANA] to properly respond" to counsel's inquiry, the bank would "need additional information," including "the correct Bank of America loan number and property address."  (Complaint, Ex. 5, 1/15/2014 Letter.)  So far as the record discloses, Plaintiff's counsel did not follow up on BANA's request for additional information, but instead brought the present suit shortly after BANA sent its response to Plaintiff's counsel.

court on or around January 23, 2014, asserting state-law claims of quiet title, fraudulent and innocent misrepresentation, slander of title, and unjust enrichment, and also seeking a declaration that Defendant CMI's claimed interest in the Shelby Township property is either extinguished or, at a minimum, subordinate to the interest held by Plaintiff. Defendant BANA removed the case to this Court on February 14, 2014, citing the diverse citizenship of the parties.[3]

### III. ANALYSIS

### A.     The Standards Governing Defendants' Motions

Through their present motions, the three Defendant financial institutions seek the dismissal of Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[4]  When considering a motion brought under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff and accept all well-pled factual allegations as true.  *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).  Yet, "the tenet that a court must

---

[3]Prior to removal, Plaintiff evidently secured a temporary restraining order that enjoined Defendant CMI from pursuing any further efforts to foreclose on the MICA Mortgage, and the parties apparently have agreed to adjourn any such foreclosure proceedings while this litigation remains pending.

[4]Although Defendants' motions are accompanied by certain documents — *e.g.,* the MICA and Comerica Mortgage instruments — that technically extend beyond the four corners of Plaintiff's complaint and its accompanying exhibits, these materials may fairly be considered "part of the pleadings," as "they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim."  *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (internal quotation marks and citation omitted).  Thus, the Court may consider these materials while still deciding Defendants' motions under the standards of Rule 12(b)(6).

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted).  Rather, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

**B.     Most of Plaintiff's Claims Against the Defendant Financial Institutions Are Barred by Michigan's Statute of Frauds.**

In each of their pending motions, the three Defendant financial institutions seek the dismissal of some or all of Plaintiff's claims as barred by Michigan's statute of frauds. Defendants appeal in particular to the following provision in Michigan's statute of frauds pertaining to claims against financial institutions:

> An action shall not be brought against a financial institution to
> enforce any of the following promises or commitments of the financial

institution unless the promise or commitment is in writing and signed with
an authorized signature by the financial institution:

> (a)  A promise or commitment to lend money, grant or extend credit,
> or make any other financial accommodation.

> (b)  A promise or commitment to renew, extend, modify, or permit a
> delay in repayment or performance of a loan, extension of credit, or other
> financial accommodation.

> (c)  A promise or commitment to waive a provision of a loan,
> extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2).[5]  In Defendants' view, at least some of the theories of

recovery advanced in Plaintiff's complaint rest upon an alleged promise by one of the

Defendant financial institutions, BANA, to make, modify, or waive a "financial

accommodation" within the meaning of § 566.132(2), and they argue that all such theories

of recovery are defeated by virtue of Plaintiff's failure to allege that Defendant BANA

made any such promise in writing.  As discussed below, the Court agrees.

The first and foremost item of relief sought in Plaintiff's complaint is a grant of

quiet title to the Shelby Township property, with Plaintiff seeking declarations (i) that it is

the owner in fee simple of this property, and (ii) that the interests claimed by any of the

Defendants are extinguished.  (*See* Complaint, Plea for Relief at ¶ A.)  As expressly

recognized in the complaint, Defendant Comerica surrendered its interest in the Shelby

---

[5]This statute defines a "financial institution" as encompassing, *inter alia,* a "state or
national chartered bank, a state or federal chartered savings bank or savings and loan association,
a state or federal chartered credit union, . . . or an affiliate or subsidiary thereof."  Mich. Comp.
Laws § 566.132(3).  Each of the Defendants asserts that it qualifies as a "financial institution"
under this provision, and Plaintiff does not contend otherwise in its response to Defendants'
motions.

Township property at the conclusion of the May 31, 2013 sheriff's sale, when Plaintiff was awarded this interest as the highest bidder, and Comerica later confirmed that it had no further interest in the property by issuing a July 8, 2013 certificate of discharge that was recorded with the Macomb County Register of Deeds on August 22, 2013.  (*See* Complaint at ¶ 35; *see also* Complaint, Ex. 7, 7/8/2013 Certificate of Discharge.)[6] Consequently, the only remaining interest in the Shelby Township property that could be extinguished through an award of relief in Plaintiff's favor is the interest that was granted in the MICA Mortgage transaction in October of 1997.  Defendant BANA acquired this interest through an assignment to its predecessor in interest, Standard Federal Bank, and a series of mergers, and BANA, in turn, purported to assign the MICA Mortgage to Defendant CMI on May 30, 2013, one day before Plaintiff was the successful bidder at the May 31, 2013 sheriff's sale of the Shelby Township property.

Accordingly, to secure fee simple title to the Shelby Township property as sought in its complaint, Plaintiff must identify a legal basis for concluding that the property interest arising from the MICA Mortgage has been extinguished, and must put forward factual allegations in support of this claim for relief.  As one such effort to advance the requisite legal theory and supporting factual allegations, Plaintiff has asserted a claim of quiet title in the first count of its complaint, and has alleged in support of this claim (i) that

---

[6]In its present motion to dismiss, Comerica does not dispute the allegation in Plaintiff's complaint that its interest in the Shelby Township property has been extinguished.  To the contrary, Comerica states that "it is undisputed that Comerica no longer claims any interest in the Property."  (Defendant Comerica's 3/7/2014 Motion to Dismiss, Br. in Support at 4.)

Defendant BANA disclaimed any interest in the Shelby Township property by "expressly indicating," when contacted by Plaintiff prior to the May 31, 2013 sheriff's sale, that it could find "no record of an interest" in this property, (Complaint at ¶ 36),[7] and (ii) that, as an assignee of BANA, Defendant CMI cannot claim an interest that BANA previously disclaimed, (Complaint at ¶ 37).

It is clear that this claim of quiet title rests inextricably upon Defendant BANA's alleged oral representations to Plaintiff that BANA had no record of an existing interest in the Shelby Township property, and that a discharge of the MICA Mortgage therefore would be issued. (*See id.* at ¶¶ 19, 36.) It is just as clear that any such assurances given by BANA to Plaintiff — *i.e.,* that BANA disclaimed any interest in the property and would grant Plaintiff a discharge of the MICA Mortgage reflected in the chain of title — would qualify under Michigan's statute of frauds as promises or commitments by a financial

---

[7]In further support of this allegation that Defendant BANA disclaimed any interest in the Shelby Township property, Plaintiff has submitted an affidavit from one of its employees, Steven Janowitz, as an exhibit to its response to Defendants' motions. (*See* Plaintiffs' Response, Ex. 6, Janowitz Aff.) Specifically, Mr. Janowitz states in this affidavit that prior to the May 31, 2013 sheriff's sale, he contacted BANA regarding the MICA Mortgage and "was told by a representative of Defendant Bank of America that it had no records pertaining to such mortgage or the [Shelby Township] Property." (*Id.* at ¶ 8.) This BANA representative then instructed Mr. Janowitz "to provide a copy of the title search certificate whereupon Defendant Bank of America would issue a discharge of the mortgage forthwith," but Mr. Janowitz acknowledges that no such discharge was issued or recorded. (*Id.* at ¶¶ 8-9.)

Arguably, the Court may not consider Mr. Janowitz's affidavit in the present ruling, where Defendants' challenges under Rule 12(b)(6) are confined to the pleadings and this affidavit supplies at least some details that are lacking from Plaintiff's underlying complaint. The Court need not resolve this issue, however, because the additional details in Mr. Janowitz's affidavit are consistent with the substance of the complaint's allegations regarding Defendant BANA's response to Plaintiff's inquiry concerning the MICA Mortgage, and the Court accepts these allegations as true in deciding Defendants' motions.

institution to "modify" or "waive" a "financial accommodation," Mich. Comp. Laws §§ 566.132(2)(b), (c), and the pertinent case law confirms this understanding. *See, e.g., CitiMortgage, Inc. v. FMM Bushnell, L.L.C.,* No. 317422, 2014 WL 7338876, at *7 (Mich. Ct. App. Dec. 23, 2014) (finding that an agreement to discharge a mortgage so that another mortgage could attain a priority position implicated Michigan's statute of frauds as "a promise by a financial institution to make a financial accommodation"); *see generally Loeffler v. BAC Home Loans Servicing, L.P.,* No. 11-13711, 2012 WL 666750, at *5 (E.D. Mich. Feb. 29, 2012) (recognizing that "[c]ourts in this District have repeatedly held" that claims resting upon oral "promises to modify home mortgages are barred by the Michigan Statute of Frauds"). Accordingly, because Plaintiff has failed to allege that the assurances purportedly given by BANA were set down in writing and signed by someone with the authority to make such a commitment on BANA's behalf, Plaintiff's claim of quiet title is barred by the Michigan statute of frauds.

While Plaintiff seeks to avoid this result by various means, the Court is not persuaded. First, Plaintiff resists the notion that BANA made any sort of "promise" or "commitment" with respect to the MICA Mortgage, and instead contends that a BANA representative offered only a statement of fact that no record could be found of BANA's interest in the Shelby Township property relating to this mortgage. Yet, anything short of a promise or assurance would be legally ineffective to overcome the lien on the property arising from the MICA Mortgage. Plaintiff acknowledges in its complaint that its investigation prior to the May 31, 2013 sheriff's sale revealed the existence of the MICA

12

Mortgage. (*See* Complaint at ¶ 18.) Even if BANA disclaimed any interest in this mortgage in its communications with Plaintiff, the Court is unaware of any authority — and neither has Plaintiff identified any — suggesting that this disclaimer alone would operate to discharge or otherwise remove the lien on the Shelby Township property arising from the mortgage. To the contrary, Plaintiff itself evidently recognizes that more was required to extinguish the property interest represented by the MICA Mortgage; it alleges in its complaint, after all, not just that BANA had no "record of an active account for the MICA [M]ortgage," but also that "*a discharge would be issued.*" (Complaint at ¶ 19 (emphasis added).) Absent allegations of BANA's affirmative assurance or commitment that it would issue a discharge that could then be recorded in the chain of title for the Shelby Township property, there would be no basis upon which to conclude that any property interest or lien arising from the MICA Mortgage should be deemed legally extinguished, such that the relief of fee simple title could be awarded to Plaintiff. Consequently, any bare statement by BANA disclaiming its interest in the Shelby Township property cannot suffice to sustain Plaintiff's claim of quiet title.

Next, Plaintiff suggests — albeit in another portion of its response brief, and not in direct opposition to Defendants' statute of frauds challenges — that BANA need not have given any promise or assurance that it would issue a discharge of the MICA Mortgage, where the interest arising from this mortgage purportedly had already been extinguished by operation of Michigan law. In support of this contention, Plaintiff cites a Michigan statute providing that "[n]o person shall bring or maintain any action or proceeding to

13

foreclose a mortgage on real estate unless he commences the action or proceeding within 15 years after the mortgage becomes due or within 15 years after the last payment was made on the mortgage."  Mich. Comp. Laws § 600.5803.  Plaintiff reasons that "[g]iven the age of the Mica Mortgage, and the fact that [as of the time of the May 31, 2013 sheriff's sale] no assignments were recorded in the public record after the assignment to Standard Federal, it was entirely plausible for [Plaintiff] to conclude that the MICA Mortgage had become stale within the definition of" this statute.  (Plaintiff's Response Br. at 14.)

Plaintiff, however, has pled no facts in support of this appeal to § 600.5803; to the contrary, the pleadings and accompanying record seemingly defeat any attempt to invoke this statute.  The MICA Mortgage was given on October 30, 1997, not quite 16 years before Plaintiff acquired its interest in the Shelby Township property at the May 31, 2013 sheriff's sale.  Thus, unless the mortgagors, Mr. and Mrs. Sims, made only a few payments on the MICA Mortgage and ceased any such payments on or before May 31, 1998, there would not be a 15-year lapse in payment that would trigger the operation of § 600.5803.[8] Plaintiff has not pled such a near-immediate cessation of payment in its complaint, nor is there any reason to believe this occurred.  More importantly, the Michigan courts have construed the 15-year limitation period of § 600.5803 as beginning to run on the *later* of

---

[8]It also is worth noting that the statute establishes only a 15-year period of limitation for bringing a foreclosure action, and does not purport to altogether extinguish a mortgage after a 15-year lapse in payment.

the two dates set forth in the statute — *i.e.,* the date of the last payment on the mortgage or the date that the mortgage becomes due. *See Degen v. Estate of Degen,* 80 Mich. App. 573, 264 N.W.2d 64, 68 (1978). Because the MICA Mortgage has a due date of November 1, 2027, (*see* Defendant Comerica's Motion, Ex. A, MICA Mortgage at 1), the 15-year period of limitation established under § 600.5803 has not yet begun to run, let alone already lapsed prior to Plaintiff's acquisition of an interest in the Shelby Township property. Accordingly, Plaintiff's claim of a "stale" mortgage lacks merit.

Finally, Plaintiff argues — again, not in direct response to Defendants' appeals to the statute of frauds, but elsewhere in its response brief — that there were various defects in the processes through which Defendant BANA assigned the MICA Mortgage to Defendant CMI and CMI, in turn, recorded this interest acquired from BANA. The Court addresses below the merits of Plaintiff's various challenges to the BANA-CMI assignment.[9] For present purposes, it is enough to observe that Plaintiff has once again failed to identify any legal authority for the proposition that defects in BANA's assignment of the MICA Mortgage to CMI could somehow operate to extinguish the lien arising from this mortgage, thereby leaving Plaintiff with clear title to the Shelby Township property. Rather, Plaintiff points only to authorities that would, at most, call into question Defendant CMI's ability to pursue foreclosure by advertisement of the

---

[9]The Court also addresses the question, as raised by Defendants BANA and CMI, whether Plaintiff has standing to challenge any purported defects in BANA's assignment of the MICA Mortgage to CMI.

MICA Mortgage.  (*See* Plaintiff's Response Br. at 15 (citing *Arnold v. DMR Financial Services, Inc.,* 448 Mich. 671, 532 N.W.2d 852, 855 n.7 (1995)).)  Consequently, even if there were defects in the assignment of the MICA Mortgage to CMI, or in CMI's recording of this assignment, this would not rescue Plaintiff's claim of quiet title from dismissal under the statute of frauds, as the viability of this claim would remain dependent upon BANA's alleged oral commitment to discharge the mortgage.

It remains only to determine whether Michigan's statute of frauds also dictates the dismissal of other claims asserted in Plaintiff's complaint, in addition to the claim of quiet title.  As explained by the Michigan Court of Appeals, the provision of the statute of frauds relied upon by Defendants here, § 566.132(2), bars any claim, "no matter its label," to "enforce the terms of a[] [financial institution's] oral promise to waive a loan provision" or to make, modify, or waive a financial accommodation.  *Crown Technology Park v. D&N Bank, FSB,* 242 Mich. App. 538, 619 N.W.2d 66, 72 (2000).  The "unqualified and broad ban" enacted in this statutory provision is designed to "eliminat[e] the possibility of creative pleading to avoid the ban."  *Crown Technology Park,* 619 N.W.2d at 72.  Thus, the question here is which, if any, of Plaintiff's remaining claims rest upon BANA's alleged oral commitment to relinquish its interest in the MICA Mortgage and issue a discharge of this mortgage.

It is clear that the claims of fraudulent and innocent misrepresentation asserted in counts II and III of Plaintiff's complaint are based on these alleged oral assurances by BANA, and therefore are barred by the statute of frauds.  In support of its claim of

16

fraudulent misrepresentation, Plaintiff alleges that Defendants "made false representations both written and oral[]" concerning the status of the MICA Mortgage, (Complaint at ¶ 49), but the only such representations identified elsewhere in Plaintiff's complaint are Defendant BANA's oral statements to Plaintiff prior to the May 31, 2013 sheriff's sale "that it did not have [any] record of an active account for the MICA [M]ortgage and that a discharge would be issued," (*id.* at ¶ 19).[10]  Likewise, Plaintiff's claim of innocent misrepresentation rests upon these very same statements.  (*See id.* at ¶ 55 (confirming that this claim is based on the same representations "set forth in the preceding paragraphs" of the complaint).)  Finally, in its response to Defendants' summary judgment motions, Plaintiff once again supports its claim of fraudulent representation solely by reference to the oral statement made by BANA prior to the May 31, 2013 sheriff's sale that its records did not disclose "an active account . . . pertaining to the [Shelby Township] [p]roperty." (Plaintiff's Response Br. at 20.)[11]  Because these alleged misrepresentations were not set down in writing and signed by an authorized BANA representative, Plaintiff's claims of fraudulent and innocent misrepresentation are barred by the statute of frauds.  *See, e.g.,*

---

[10]To be sure, Plaintiff points elsewhere in its complaint to a BANA representative's written statement in a January 15, 2014 letter that the bank was "unable to locate" any records relating to the Shelby Township property.  (*See id.* at ¶¶ 24, 61; *see also* Complaint, Ex. 5, 1/15/2014 Letter.)  Yet, Plaintiff cannot plausibly contend that it acted in reliance on any statements in a letter that BANA did not issue until several months ***after*** Plaintiff purchased the Shelby Township property at a May 31, 2013 sheriff's sale.

[11]Notably, Plaintiff does not even address its claim of innocent misrepresentation in its response to Defendants' summary judgment motions, so this claim evidently has been abandoned.

*Williams v. Pledged Property II, LLC,* No. 12-1056, 508 F. App'x 465, 468-69 (6th Cir.

Dec. 13, 2012) (holding that claims of fraud and misrepresentation arising from an alleged

oral promise to delay a foreclosure sale were barred by Michigan's statute of frauds);

*Loeffler,* 2012 WL 666750, at *5 (collecting cases from this District holding that

"misrepresentation claims based on alleged [oral] promises to modify home mortgages are

barred by the Michigan Statute of Frauds"); *Carl v. BAC Home Loans Servicing, LP,* No.

11-11255, 2011 WL 3203086, at *2-*3 (E.D. Mich. July 27, 2011) (dismissing claims of

misrepresentation and fraud as foreclosed by Michigan's statute of frauds, where the

plaintiffs did "not identify — or even allege the existence of — any signed writing in

which [the defendant lender] promised to modify the terms of [the plaintiffs'] loan or delay

the commencement of foreclosure proceedings").

     The Court further concludes that the slander of title claim asserted in count IV of

Plaintiff's complaint is likewise defeated by Michigan's statute of frauds.  This claim rests

upon the premise that Defendant CMI impaired Plaintiff's rights in and title to the Shelby

Township property by recording an interest in this property that CMI obtained through

BANA's attempted assignment of the MICA Mortgage.  (*See* Complaint at ¶¶ 60, 62.)  In

Plaintiff's view, this interest claimed and recorded by CMI is "unsupported" and "does not

exist," because it derives from a purported assignment from another entity, Defendant

BANA, that had "expressly indicated" that it had no "record of a mortgage interest in" the

Shelby Township property.  (*Id.* at ¶¶ 61-63.)  Once again, then, the lynchpin of this claim

is Defendant BANA's alleged disclaimer of any interest in the MICA Mortgage or the

18

Shelby Township property, which left it with no interest that could validly be assigned to

Defendant CMI.  Because BANA's alleged disclaimer is evidenced solely by oral

statements made to Plaintiff, and is not set forth in any writing signed by an authorized

BANA representative, Plaintiff's slander of title claim is barred by the statute of frauds.

**C.    Plaintiff's Allegations Fail as a Matter of Law to Support Any of the Theories of Recovery Advanced in Its Complaint.**

Although the Court has determined that the claims asserted in counts I through IV

of Plaintiff's complaint run afoul of the Michigan statute of frauds, Defendants argue in

addition that each of the six substantive counts of Plaintiff's complaint[12] fails to state a

claim upon which relief can be granted.  As discussed below, the Court agrees.

**1.    Plaintiff's Claim of Quiet Title**

Plaintiff has asserted a claim of quiet title in count I of its complaint.  Under

Michigan law, Plaintiff has the initial burden of establishing a *prima facie* case that it "has

superior title or right to" the Shelby Township property, *Derbabian v. Bank of America,*

*N.A.,* No. 14-1253, 587 F. App'x 949, 958 (6th Cir. Oct. 17, 2014), and it must plead

"facts establishing the superiority of [its] claim" to the property, *James v. Federal Home*

*Loan Mortgage Corp.,* No. 13-13029, 2014 WL 4773648, at *15 (E.D. Mich. Sept. 24,

---

[12]Counts VII and VIII of the complaint do not advance separate theories of recovery, but instead seek particular forms of relief — namely, exemplary damages and a declaratory judgment — based upon the claims asserted and allegations made elsewhere in the complaint. The same arguably can be said about count V of the complaint, in which Plaintiff seeks a declaration that the property interest claimed by Defendant CMI is subordinate to Plaintiff's interest in the Shelby Township property.  For present purposes, however, the Court will treat count V as setting forth a separate claim for relief.

19

2014).  As discussed earlier, Plaintiff's claim of superior title to the Shelby Township property rests upon (i) the undisputed fact that Defendant Comerica relinquished its interest in the property as a result of the May 31, 2013 sheriff's sale, (Complaint at ¶ 35), (ii) the allegation that Defendant BANA's interest in the property was extinguished when it "expressly indicat[ed]" to Plaintiff that it had "no record of an interest in" the property, (*id.* at ¶ 36), and (iii) the assertion that Defendant CMI has no valid interest in the property because its claim derives from an assignment from an entity, BANA, that itself purportedly disclaimed any interest in the property, (*id.* at ¶ 37).

The Court already has determined that this claim of quiet title impermissibly depends upon the enforcement of alleged oral assurances by Defendant BANA that it had no interest in the Shelby Township property and would issue a discharge of the MICA Mortgage.  Even apart from this statute of frauds concern, however, the brute fact remains that the MICA Mortgage was ***not*** discharged at the time Plaintiff acquired its interest in the Shelby Township property at the May 31, 2013 sheriff's sale.  Indeed, Plaintiff expressly concedes in its complaint (i) that it was aware prior to the sheriff's sale of the existence of the MICA Mortgage, which had been duly recorded in the chain of title for the Shelby Township property, (*see id.* at ¶¶ 18, 20; *see also* Complaint, Ex. 3 (title search showing that the MICA Mortgage was recorded on November 19, 1997)), and (ii) that this mortgage was not discharged, despite Defendant BANA's purported assurance that a discharge would be issued, (*see* Complaint at ¶ 19).  Under Michigan law, this previously recorded interest, which Plaintiff acknowledges was not discharged, has priority over the

20

property interest acquired by Plaintiff at the sheriff's sale, nearly 16 years after the MICA Mortgage came into existence and was recorded. *See Richards v. Tibaldi,* 272 Mich. App. 522, 726 N.W.2d 770, 780 (2006) (explaining that "Michigan is a race-notice state" in which "the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers" (internal quotation marks and citation omitted)); *Lakeside Associates v. Toski Sands,* 131 Mich. App. 292, 346 N.W.2d 92, 95 (1983) (same). It follows that Plaintiff has failed to plead facts establishing its superior claim to the Shelby Township property.

In an effort to overcome this deficiency in the pleading of its claim of quiet title, Plaintiff argues that it, rather than Defendants BANA and CMI, should be entitled to the benefit of Michigan's race-notice statute, Mich. Comp. Laws § 565.29, because it recorded its interest in the Shelby Township property on June 17, 2013, over a month before CMI recorded the May 30, 2013 assignment from BANA through which it obtained an interest in this property. This contention, however, is defeated by well-established Michigan case law, which holds that "an assignee stands in the shoes of an assignor, acquiring the same rights . . . as the assignor." *Coventry Parkhome Condominium Ass'n v. Federal National Mortgage Ass'n,* 298 Mich. App. 252, 827 N.W.2d 379, 382 (2012). Even more to the point, the Michigan courts have confirmed that "a mortgage assignee has the same priority rights as the original mortgage assignor." *Coventry Parkhome,* 827 N.W.2d at 382. In this case, because the MICA Mortgage was recorded well before Plaintiff acquired its interest in the Shelby Township property, this superior priority passed from BANA to CMI when

21

the latter acquired the MICA Mortgage through an assignment executed on May 30, 2013, and the property interest obtained by CMI through this assignment therefore is superior to the interest acquired by Plaintiff at the May 31, 2013 sheriff's sale.

To be sure, Plaintiff makes much of the fact that it recorded its property interest relatively promptly, on June 17, 2013, while CMI did not record its interest in the property — obtained through BANA's assignment of the MICA Mortgage on May 30, 2013, a day before the sheriff's sale at which Plaintiff acquired its interest — until over a month later, on July 26, 2013. In Plaintiff's view, CMI's purported delay in recording its property interest operated to surrender CMI's priority to Plaintiff under Michigan's race-notice statute. Alternatively, Plaintiff suggests that it is entitled to the status of a "subsequent purchaser in good faith" under this statute, Mich. Comp. Laws § 565.29, where it could not have known at the time of the May 31, 2013 sheriff's sale that CMI had acquired an interest in the Shelby Township property through an assignment of the MICA Mortgage that was executed a day earlier, but was not recorded until nearly two months later.

Again, however, the governing Michigan case law defeats the notions of priority put forward by Plaintiff in support of its claim of quiet title. Most notably, in two cases decided over a century ago, the Michigan Supreme Court drew a sharp distinction between the recording of an underlying interest in property, such as a mortgage, and the recording of an assignment of this interest. In *Flowers v. Reilly,* 125 Mich. 562, 84 N.W. 1091, 1091-92 (1901), defendant Nicholas Savage granted a mortgage to the Peninsular Savings Bank on May 27, 1890 for property he owned in the city of Detroit, and the bank, in turn,

22

assigned this mortgage to co-defendant Edward Reilly on December 17, 1890, but this assignment was not recorded until several years later, on January 24, 1898. In the meantime, the plaintiffs bid on and purchased the subject property in December of 1897. Before making this bid, the plaintiffs discovered the 1890 mortgage granted by Savage in the property records, and they alleged that they "caused an inquiry to be made at the bank" — which was, at the time, the "record owner[]" of the 1890 mortgage — and "were informed the mortgage had been paid." *Flowers,* 84 N.W. at 1092. In March of 1898, however, defendant Reilly — who had been assigned the mortgage back in 1890, but had not recorded this assignment until January of 1898 — commenced proceedings to foreclose on the 1890 mortgage, and Reilly then purchased the property at a sheriff's sale held on June 2, 1898.

The plaintiffs brought suit in 1899, alleging "collusion, fraud, and conspiracy" among Savage, Reilly, and a third defendant, and seeking cancellation of the 1890 mortgage and a decree that they owned the subject property "free and clear from all liens of said Reilly arising out of the [1890] mortgage." 84 N.W. at 1092. The Michigan Supreme Court, however, affirmed the dismissal of the plaintiffs' suit, observing that at the time the plaintiffs purchased the subject property, the 1890 mortgage "remained undischarged of record." 84 N.W. at 1092. In light of this record showing that the property remained subject to the 1890 mortgage, the court found that the plaintiffs had failed to produce evidence of "any collusion or conspiracy to defraud," notwithstanding their claim that they were told by a bank representative that the mortgage had been paid.

23

84 N.W. at 1092.

Similarly, in *Wilson v. Campbell,* 110 Mich. 580, 68 N.W. 278 (1896), a married couple, Mr. and Mrs. Freeling Potter, granted a mortgage on certain property to Erwin White, the treasurer of the Michigan Mortgage Company.  This mortgage was recorded and then assigned to the defendant, Elizabeth Campbell, in June of 1887, but this assignment was not recorded until several years later, on April 13, 1894.  In October of 1888 — after the assignment of the Potters' mortgage but before this assignment was recorded — the Potters sold the mortgaged premises to the plaintiff, Robert Wilson.  A few years later, on April 1, 1892, Mr. Wilson sought and obtained a loan from the Michigan Mortgage Company, and granted this lender a mortgage on the property he had purchased from the Potters as security for the loan.  The lender, in turn, assigned this second mortgage to Mrs. John F. Nichols later in April of 1892.  Mr. Wilson then brought suit to compel the discharge of the senior mortgage granted by the Potters and assigned to Mrs. Campbell, and the trial court granted this relief, citing as one ground Mrs. Campbell's "neglect to record her assignment until after the execution of the second mortgage [on] April 1, 1892."  *Wilson,* 68 N.W. at 279.

The Michigan Supreme Court reversed, holding that the mortgage held by Mrs. Campbell was "entitled to priority over" the subsequent mortgage granted by Mr. Wilson and then assigned to Mrs. Nichols.  *Wilson,* 68 N.W. at 281.  In so ruling, the court observed that "[t]he mortgage of Mrs. Campbell was prior in point of time, and was duly recorded," so that if the later mortgage held by Mrs. Nichols was "to be given priority," it

24

could only be "because the record showed this [earlier] mortgage in Erwin E. White,"

whose assignment of the Potters' mortgage to Mrs. Campbell had not yet been recorded as

of the date Mrs. Nichols obtained her interest in the Wilson mortgage.  68 N.W. at 280.

Although the absence of a recorded assignment to Mrs. Campbell might have led Mrs.

Nichols to "assume[] that there was no prior incumbrance" on the property when the

Wilson mortgage was assigned to her in April of 1892, the court explained that the law did

not permit this assumption:

> Had [Mrs. Nichols] examined the record, she would have discovered a
> mortgage [granted by the Potters] to Mr. White.  She must, therefore, be held
> bound by notice of this . . . .  Having constructive knowledge of the
> existence of this mortgage, Mrs. Nichols also was chargeable in law with the
> further notice that the mortgage is a lien in the hands of any person to whom
> it may have been legally transferred, and that ***the record of such transfer is
> not necessary to its validity, nor as a protection against the purchaser of
> the property mortgaged***, or any other person than a subsequent purchaser in
> good faith of the [senior] mortgage itself or the note or debt securing it, but
> rather that ***one purchasing the premises from the mortgagee would take
> them subject to the lien of the mortgage, irrespective of the ownership of it***.
> The knowledge and notice would, in case of a direct purchase from White,
> have made it [Mrs. Nichols's] duty, in the exercise of proper diligence, to
> inquire whether her vendor, the mortgagee, was still the owner of the
> mortgage; and her omission to do so would have deprived her of the
> protection of a bona fide purchaser.

68 N.W. at 280-81 (emphasis added) (citations omitted).

Thus, in both *Flowers* and *Wilson,* as here, a senior mortgage granted on a parcel of

property was both recorded and assigned to another party before the plaintiffs purchased

the property, but the assignment of the mortgage was not recorded until after the plaintiffs

had obtained their interest in the property.  Nonetheless, the Michigan Supreme Court held

25

in each case that the senior mortgage retained its priority despite the absence of a recorded assignment to the current holder of this mortgage.  As applied here, these two rulings by Michigan's highest court defeat Plaintiff's claim that it has a superior interest in the Shelby Township property due to its recording of this interest prior to the recording of the BANA-to-CMI assignment of the MICA Mortgage.  In addition, *Wilson* precludes Plaintiff's appeal to the status of a "subsequent purchaser in good faith" under Mich. Comp. Laws § 565.29, as the court confirmed in that case that the recording of a mortgage on a parcel of property serves as constructive notice that a subsequent purchaser of the property takes the premises "subject to the lien of the mortgage, irrespective of the ownership of it."  *Wilson,* 68 N.W. at 281; *see also CitiMortgage,* 2014 WL 7338876, at *5 ("In order to be a good-faith purchaser, a party must acquire an interest in property without notice of a third party's claimed interest.").  Accordingly, while *Flowers* and *Wilson* admittedly are not of recent vintage, Plaintiff has failed to identify any subsequent Michigan case law or other pertinent authority suggesting that these decisions no longer reflect the current state of Michigan law regarding the effect (or lack thereof) of an assignment on the priority of a lien arising from a duly recorded mortgage.

As its final attempt to establish superior title to the Shelby Township property, Plaintiff points to its allegations of purported defects in the assignment of the MICA Mortgage from BANA to CMI, suggesting that these defects might somehow alter the priority to be given to the MICA Mortgage.  Yet, as Defendants correctly observe, Plaintiff lacks standing under Michigan law to challenge this assignment.  *See Conlin v.*

26

*Mortgage Electronic Registration Systems, Inc.,* 714 F.3d 355, 361 (6th Cir. 2013);

*Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC,* No.

10-1782, 399 F. App'x 97, 102-03 (6th Cir. Oct. 28, 2010).  Plaintiff acknowledges this

usual principle of Michigan law, but notes that a third party nonetheless may raise a defect

in an assignment by identifying prejudice it would suffer as a result of this defect — *e.g.,*

the prospect of double liability.  *See Conlin,* 714 F.3d at 362; *Livonia Properties,* 399 F.

App'x at 102.  Given that the MICA Mortgage would remain in place regardless of the

validity of BANA's attempted assignment of this mortgage to CMI, and that the only

consequence of the assignment's invalidity would be a change in the ***identity*** of the holder

of this senior interest in the Shelby Township property, and not the ***existence*** of this senior

interest, Plaintiff cannot show any prejudice that would permit it to challenge BANA's

assignment of the MICA Mortgage to CMI.[13]

---

[13]For what it is worth, even if Plaintiff had standing to challenge the assignment, its claims of defects in this assignment appear to be wholly without merit.  First, to the extent that Plaintiff contends that BANA's assignment of the MICA Mortgage was necessarily invalid because this financial institution previously had disclaimed any interest in this mortgage, the Court already has determined that this challenge impermissibly rests upon oral representations that were not memorialized in writing.

Next, while Plaintiff complains of delay in CMI's recording of the assignment, it cannot plausibly assert that it was prejudiced by any such delay.  The assignment itself, after all, was executed just one day before Plaintiff acquired its interest in the Shelby Township property at the May 31, 2013 sheriff's sale.  Accordingly, absent near-instantaneous recording of the assignment — a feat that presumably cannot be achieved through any ordinary governmental process for recording documents, which typically introduces some period of delay between the submission and the recording of a document — a title search by Plaintiff would not have disclosed an assignment of the MICA Mortgage made just one day before the sheriff's sale.  It follows that there is no causal connection between CMI's purported delay in recording its interest in the Shelby Township property and any injury Plaintiff claims to have suffered due to its inability to

### 2.    Plaintiff's Claims of Fraudulent and Innocent Misrepresentation

In counts II and III of its complaint, Plaintiff has asserted claims of fraudulent and innocent misrepresentation, based on allegations that one or more of the Defendants "made false representations both written and orally as to the facts concerning the reinstatement of the MICA Mortgage." (Complaint at ¶ 49.) As discussed earlier, no written assurances concerning the MICA Mortgage were given to Plaintiff prior to its successful bid on the Shelby Township property at the May 31, 2013 sheriff's sale, and Michigan's statute of frauds precludes Plaintiff's reliance on oral assurances as the basis for its claims of fraudulent and innocent misrepresentation against the Defendant financial institutions. Apart from this infirmity, Defendants contend that there are other deficiencies in

------

learn of the assignment of the MICA Mortgage before it bid on the Shelby Township property.

Finally, Plaintiff suggests that the assignment was "improperly notarized by an allonge" — *i.e.,* on a separate sheet of paper attached to the assignment — "rather than on the face of the instrument itself." (Plaintiff's Response Br. at 16 (citing Complaint, Ex. 4, 5/30/2013 Assignment of Mortgage).) In Plaintiff's view, this violated a Michigan statute governing the recording of instruments with the register of deeds, which dictates that "[t]he name of any notary public whose signature appears upon the instrument [must be] legibly printed, typewritten, or stamped ***upon the instrument*** immediately beneath the signature of that notary public." Mich. Comp. Laws § 565.201(1)(c) (emphasis added). As Defendant CMI observes in response, however, this same statute contemplates instruments of multiple pages, *see* Mich. Comp. Laws § 565.201(1)(f) (establishing formatting requirements for "each sheet of the instrument"), as well as "attachment[s]" to an instrument, *see* Mich. Comp. Laws § 565.201(1)(f)(vi). More importantly, the statute provides that "[a]ny instrument received and recorded by a register of deeds shall be conclusively presumed to comply with this act." Mich. Comp. Laws § 565.201(4). Against this plain language of the statute, as well as the undisputed evidence that the challenged assignment was, in fact, recorded, Plaintiff points to no authority in support of its contention that notarization on a separate page serves to invalidate an assignment. *Cf. Gold v. JP Morgan Chase Bank, N.A. (In re Bright),* Adv. No. 13-4286, 2013 WL 3270346, at *6 (Bankr. E.D. Mich. June 26, 2013) (pointing to language in Michigan's Notary Public Act, Mich. Comp. Laws § 55.261 *et seq.,* that "strongly supports the conclusion that a defect in the notarization of a document does not defeat the validity of the transaction that was notarized").

Plaintiff's pleading of these two claims.  The Court agrees.

First, to prevail on a claim of either innocent or fraudulent misrepresentation, Plaintiff must plead and prove that it reasonably relied on a false representation made by one of the Defendants.  *See Forge v. Smith,* 458 Mich. 198, 580 N.W.2d 876, 883-84 (1998) (finding that the plaintiffs' claim of innocent misrepresentation was defeated by a failure to show reasonable reliance); *Novak v. Nationwide Mutual Insurance Co.,* 235 Mich. App. 675, 599 N.W.2d 546, 553-54 (1999) (holding that a plaintiff's reliance must be reasonable to sustain a claim of fraudulent misrepresentation).  As discussed, the only misrepresentations identified in Plaintiff's complaint are the alleged oral assurances by a representative of Defendant BANA that this financial institution "did not have [any] record of an active account for the MICA [M]ortgage" and that "a discharge [of the MICA Mortgage] would be issued."  (Complaint at ¶ 19.)  Yet, Plaintiff acknowledges elsewhere in its complaint that the MICA Mortgage appeared in the chain of title for the Shelby Township property, and that despite BANA's alleged assurance, no discharge of this mortgage was issued or recorded in the property's chain of title.  (*See id.* at ¶¶ 18-19.)  In light of the undisputed evidence that at the time of the May 31, 2013 sheriff's sale, the MICA Mortgage remained in the chain of title of the Shelby Township property as a duly recorded (and senior) property interest, and in light of the prohibition in Michigan's statute of frauds against the enforcement of oral promises or commitments made by a financial institution, Plaintiff cannot establish that it reasonably relied on the alleged oral assurances by a BANA representative that the MICA Mortgage would be discharged.  *See Forge,* 580

29

N.W.2d at 884 (finding that the plaintiff's reliance was not reasonable where he "had the means to determine" the truth of the representation made by the defendant); *Webb v. First of Michigan Corp.,* 195 Mich. App. 470, 491 N.W.2d 851, 853 (1992) (emphasizing that "there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant").

Next, Defendants point to the requirement under Michigan law that a claim of innocent misrepresentation is available only "to parties in privity of contract."  *United States Fidelity & Guaranty Co. v. Black,* 412 Mich. 99, 313 N.W.2d 77, 85 (1981); *see also Tocco v. Richman Greer Professional Ass'n,* No. 13-1055, 553 F. App'x 473, 476 (6th Cir. Dec. 26, 2013).  Plaintiff has not alleged the requisite privity of contract with either BANA or CMI,[14] nor does the record otherwise indicate that this element of a claim of innocent misrepresentation could be satisfied in this case.[15]  Consequently, Plaintiff's claim of innocent misrepresentation is subject to dismissal on this ground as well.

---

[14]Although Plaintiff's complaint does not indicate which of the three Defendants are parties to the claims of fraudulent and innocent misrepresentation, there are no allegations that Defendant Comerica made any false representations to Plaintiff that might give rise to Comerica's liability under either of these theories.  Moreover, in its consolidated response to Defendants' motions, Plaintiff refers exclusively to BANA as the party that made false representations.  (*See* Plaintiff's Response Br. at 19-20.)  Accordingly, the Court concludes that Comerica is not a party to the claims of fraudulent and innocent misrepresentation asserted in counts II and III of Plaintiff's complaint.

[15]Indeed, as noted earlier, Plaintiff makes no mention whatsoever of any claim of innocent misrepresentation in its response to Defendants' motions, much less offers any argument as to how the privity and other elements of such a claim have been pled or could be established in this case.

30

### 3.    Plaintiff's Claim of Slander of Title

Count IV of Plaintiff's complaint asserts a claim of slander of title, evidently arising from Defendant CMI's recording of Defendant BANA's May 30, 2013 assignment of the MICA Mortgage to CMI.  According to Plaintiff's complaint, because BANA allegedly had previously disclaimed any interest in the MICA Mortgage, BANA had no remaining interest in the Shelby Township property that it could assign to CMI.  (*See* Complaint at ¶ 61.)  Consequently, because CMI "has recorded an interest in the [Shelby Township] property which its assignor indicates does not exist," Plaintiff alleges that this Defendant financial institution has unlawfully "impaired Plaintiff's rights and title to" this property.  (*Id.* at ¶ 62.)  For reasons similar to those set forth above with respect to Plaintiff's claim of quiet title, the Court readily concludes that Plaintiff's allegations cannot support a viable claim of slander of title.

To establish a slander of title claim, whether under Michigan common law or under Mich. Comp. Laws § 565.108, a plaintiff must show "that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages."  *B & B Investment Group v. Gitler,* 229 Mich. App. 1, 581 N.W.2d 17, 20 (1998).  The purportedly "false" statement identified by Plaintiff here is the assignment recorded by Defendant CMI on July 26, 2013, through which Defendant BANA assigned the MICA Mortgage to CMI.  As previously discussed, however, each of the theories put forward by Plaintiff to challenge the validity of this assignment — *e.g.,* BANA's alleged disclaimer of any interest in the Shelby Township property, the possibility that BANA's

31

interest had been extinguished by operation of Mich. Comp. Laws § 600.5803, CMI's purported delay in recording the assignment, and alleged defects in the instrument through which BANA and CMI executed the assignment — lacks a basis in fact or law (or both). In addition, even assuming that the assignment could somehow be characterized as a "false" statement, any injury suffered by Plaintiff cannot be attributed to this assignment, but instead is due to the superior priority position of the MICA Mortgage vis-à-vis the Comerica Mortgage — a circumstance that the assignment, whether valid or otherwise, did nothing to alter.  Accordingly, Plaintiff has failed to plead a viable claim of slander of title.

**4.    Plaintiff's Claim for Subordination of Defendant CMI's Interest in the Shelby Township Property**

Next, in count V of its complaint, Plaintiff asserts that any interest claimed by Defendant CMI in the Shelby Township property should be subordinated to the interest acquired by Plaintiff at the May 31, 2013 sheriff's sale.  Assuming, for present purposes only, that count V of the complaint sets forth a discrete cause of action, rather than merely seeking another form of relief under one or more of the legal theories advanced elsewhere in the complaint, the Court finds that the allegations of Plaintiff's complaint fail to provide a basis for an award of the relief sought in this count.

Plaintiff's claim of a superior interest in the Shelby Township property rests on the premise that Defendant CMI "sat upon its claimed rights" by "fail[ing] to timely record" the assignment of the MICA Mortgage.  (Plaintiff's Response Br. at 21; *see also* Complaint at ¶ 71 (alleging that this assignment is "void as against Plaintiff's prior

32

recorded interest" acquired in the May 31, 2013 sheriff's sale).)  As explained earlier, however, Michigan law holds that "a mortgage assignee has the same priority rights as the original mortgage assignor," *Coventry Parkhome,* 827 N.W.2d at 382, and this remains true even if another party acquires and records a junior interest in the subject property before the assignee of the senior mortgage records the assignment through which it obtained its senior interest, *see Flowers,* 84 N.W. at 1092; *Wilson,* 68 N.W. at 280-81. Moreover, to the extent that Plaintiff alleges that CMI's interest in the Shelby Township property should be subordinated by virtue of defects in the assignment through which CMI acquired this interest or in the recording of this assignment, (*see* Complaint at ¶ 70), the Court has already held that Plaintiff lacks standing under Michigan law to challenge BANA's assignment of the MICA Mortgage to CMI, and that, in any event, Plaintiff's claims of defects in the assignment lack merit.  Accordingly, Plaintiff has failed to identify a viable basis for subordinating CMI's interest in the Shelby Township property.

### 5. Plaintiff's Claim of Unjust Enrichment

Plaintiff's final substantive theory of recovery is set forth in count VI of its complaint, which asserts a claim of unjust enrichment.  Although the pleading in support of this claim is bare bones, to put it charitably, and although Plaintiff fails to identify the specific Defendants against which this claim is asserted,[16] Plaintiff indicates in its response

---

[16]Indeed, the final paragraph in support of this claim shows telltale signs of cutting and pasting from another complaint arising under wholly different circumstances, resulting in allegations that make no sense here:

Permitting Defendants to retain the economic benefit derived as a result of

to Defendants' motions that its theory of unjust enrichment is focused solely on Defendant Comerica.  In particular, Plaintiff asserts that "Comerica had or should have had knowledge of the interest which would later be claimed by CMI," and that Comerica took advantage of this superior knowledge by allowing Plaintiff to bid on the Shelby Township property at the May 31, 2013 sheriff's sale and be left "holding the bag" when it subsequently learned of the senior property interest claimed by CMI.  (Plaintiff's Response Br. at 22-24.)

This claim of unjust enrichment impermissibly rests upon rank speculation and conspiracy theories that enjoy no support whatsoever in the factual allegations of the complaint and, quite frankly, defy basic logic.  Plaintiff theorizes, for example, that Comerica adjourned the sheriff's sale on the Shelby Township property "seemingly to provide adequate time for CMI to obtain an assignment" of the senior MICA Mortgage from Defendant BANA, (*id.* at 22), but Plaintiff fails to explain (i) how or why Comerica would know, any more than Plaintiff or anyone else might, that BANA was contemplating an assignment of the MICA Mortgage to CMI,[17] (ii) why Comerica should not have been

---

       her [sic] misrepresentations and promises to Plaintiff with regard to occupancy
       [sic] of the Subject Property and their claimed interests in the Subject Property,
       would result in unjust enrichment to the detriment of Plaintiff.

(Complaint at ¶ 76.)

       [17]Plaintiff surmises that Defendant Comerica was in a position to know of Defendant CMI's plans because the same law firm, Trott & Trott, that represented Comerica in connection with the May 31, 2013 sheriff's sale also represented CMI when it commenced foreclosure proceedings on the MICA Mortgage in December of 2013.  Plainly, however, the bare fact of Trott & Trott's representation of CMI in late 2013 does nothing to support the notion that this

completely indifferent to the identity of the holder of the MICA Mortgage, given that this mortgage had priority over the Comerica Mortgage regardless of whether BANA retained it or assigned it to another financial institution, or (iii) most importantly, what business motivation Comerica might have had to ensure that a competitor financial institution, CMI, was able to secure an assignment of the MICA Mortgage before Comerica went through with the sheriff's sale of the Shelby Township property. Beyond this implausible conjecture, Plaintiff's posited conspiracy among the Defendant financial institutions would have been all for naught unless Comerica could find a bidder at the May 31, 2013 sheriff's sale who would be indifferent to the existence of the senior MICA Mortgage recorded in the chain of title for the Shelby Township property, and would instead operate under the belief — wholly mistaken under Michigan law, as shown above — that it could somehow acquire the property free and clear of this senior interest. The mere fact that Plaintiff proved to be such a bidder does little, if anything, to render Plaintiff's conspiracy theory more viable.

As explained earlier, in order for a claim to withstand a Rule 12(b)(6) motion to dismiss, the factual allegations in support of this claim, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974. Because

---

law firm was aware *six months earlier* that its future client, CMI, had secured an assignment of the MICA Mortgage from Defendant BANA in May of 2013. And even if Trott & Trott had learned of this transaction, it presumably would have been under an ethical obligation not to share information learned from one client (CMI) with another (Comerica).

Plaintiff's claim of unjust enrichment patently fails to satisfy this standard, and instead

rests upon wholly fanciful allegations in service of an utterly implausible theory of

liability, the Court readily concludes that this claim is subject to dismissal.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Comerica

Bank's March 7, 2014 motion to dismiss (docket #9) is GRANTED.  IT IS FURTHER

ORDERED that Defendant Bank of America, N.A.'s March 7, 2014 motion to dismiss

(docket #10) also is GRANTED.  Finally, IT IS FURTHER ORDERED that Defendant

CitiMortgage, Inc.'s March 7, 2014 motion to dismiss (docket #11) also is GRANTED.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  March 23, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on March 23, 2015, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135